IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 09-cv-02228-REB-MEH

SCOTT L. HOWARD,

    Plaintiff,

v.

ARISTEDES ZAVARAS, Executive Director of the Colorado Department of Corrections, in his official capacity;
ROBERT CANTWELL, Director of Prisons, in his individual and official capacities;
SCOTT H. HALL, Warden of the Denver Reception and Diagnostic Center, in his individual and official capacities;
DONA ZAVISLAN, Associate Warden of the Denver Reception and Diagnostic Center, in her individual and official capacities; and
SERGEANT JANE DOE, Intake Sergeant at the Denver Reception and Diagnostic Center, in her individual and official capacities.

    Defendants.
_____

**PROPOSED SCHEDULING ORDER**
_____

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling Conference in this matter was held before Magistrate Judge Michael E. Hegarty on January 19, 2010 at 9:45 a.m. in Courtroom 203, Second Floor at the Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.

The following appeared as counsel on behalf of the Parties:

| | |
|---|---|
| Sara J. Rich, Esq. | Andrew D. Ringel, Esq. |
| KILLMER, LANE & NEWMAN, LLP | HALL & EVANS, L.L.C. |
| 1543 Champa Street, Suite 400 | 1125 17th Street, Suite 600 |
| Denver, Colorado 80202 | Denver, CO 80202-2052 |
| Phone: 303-571-1000 | Phone: 303-628-3453 |
| Fax: 303-571-1001 | Fax: 303-628-3238 |
| srich@kln-law.com | ringela@hallevans.com |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

## 2. STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States, and is brought pursuant to 42 U.S.C. § 1983. Subject matter jurisdiction before this Court is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### a.  Plaintiff:

While incarcerated within the Colorado Department of Corrections ("DOC") in 2004 and 2005, Plaintiff Scott Howard was recognized by other inmates from media reports about his conviction for numerous theft charges and for Federal tax code violations. Specifically, Mr. Howard was recognized by members of the white supremacist prison gang called the "2-11 Crew." The 2-11 Crew is listed within DOC as a Security Threat Group ("STG"). An STG is defined by DOC as "a group of three or more individuals with a common interest, bond, or activity characterized by criminal delinquent conduct, engaged in either collectively or individually, with the potential to create a security threat to DOC facilities or offices and/or functions within DOC."

In late 2004, Mr. Howard was approached by 2-11 Crew members at Freemont Correctional Facility regarding his criminal endeavors and the possibility of assisting the gang in perpetrating similar crimes for the benefit of the gang leaders. Mr. Howard is obviously gay, and when 2-11 Crew members observed that Howard was a

homosexual, they began charging him "rent" and threatened him with physical violence if he refused to pay. Eventually, Mr. Howard was forced into prostitution and forced to perform sexual acts on inmates in exchange for money that was paid to the gang via canteen items. Howard was sexually assaulted approximately three times while housed at the Freemont Correctional Facility and was then transferred to Sterling Correctional Facility ("SCF") for his protection.

While at SCF in 2005, Mr. Howard was viciously attacked on more than one occasion -- both physically and sexually -- by known 2-11 Crew members, including Simon Shimbel. On one occasion, Inmate Shimbel called Mr. Howard to the bathroom where Inmate Shimbel punched him in the stomach, pushed him into the far stall, and sexually assaulted him. On another occasion, Inmate Shimbel stood outside as a lookout while another inmate raped Mr. Howard. Mr. Howard was also extorted by the 2-11 Crew after he was told that his family would be harmed if he was unable to pay.

In February 2006, Mr. Howard participated in an investigation conducted by Lawrence K. Graham, an investigator with the DOC Inspector General's Office. Inspector Graham filed a formal report detailing Shimbel's involvement in the extortion, sexual assaults and rape Plaintiff suffered. Upon information and belief, Inmate Shimbel was eventually disciplined by being housed in the Administrative Segregation Unit. As a result of Investigator Graham's report, DOC Offender Services staff member Rex Kohle generated an electronic record of "custody issues" in Plaintiff's file on DOC's information system to which all DOC personnel have access, called DCIS. This notice of custody issues was entered as a permanent "red flag" to alert DOC Staff, including but not limited to, the Inspector General's Office, Offender Services, facility intelligence

officers, case managers, housing supervisors and other DOC personnel, that Plaintiff was not to be placed in proximity to Shimbel at any time due to the substantial risk of serious harm to Plaintiff Howard.

Since the "custody issues" stemmed from Plaintiff's report of sexual assault and rape, the procedures of the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, *et seq.* ("PREA"), which are implemented through the DOC Administrative Regulation 100-40, were triggered. PREA mandates that the victim and the perpetrator <u>not</u> be placed in proximity to one another.

On September 18, 2007, Plaintiff was housed at the Denver Reception and Diagnostic Center's ("DRDC") Infirmary Unit where he was being released from the DOC and transferred to the custody of the U.S. Marshal Service. An officer at DRDC escorted Plaintiff down the stairs from the Infirmary to the Intake Holding Area. The officer placed Mr. Howard in a cell where several other inmates were waiting for release to the Immigration and Customs Enforcement Agency.

Plaintiff was in that cell for approximately ten minutes when a female Intake Sergeant opened the door and asked for Plaintiff's name and inmate number, which Plaintiff provided. Defendant Sergeant Jane Doe looked at a document she had in her hand and then asked if Plaintiff was a "U.S. Marshall hold." Mr. Howard confirmed that he was on a U.S. Marshall hold and Defendant Sergeant Jane Doe then stated, "I need to put you with the other marshal holds -- these guys are waiting for immigration." Plaintiff exited the cell and was escorted past several vacant cells to another holding cell.

When Defendant Sergeant Jane Doe stopped at the holding cell, Plaintiff saw

4

Inmate Shimbel standing in the doorway looking out of the window.  Plaintiff said to Defendant Sergeant Jane Doe, "I can't go in there, he's a custody issue."  Defendant Sergeant Jane Doe replied that she was unaware of any custody issues.  Mr. Howard informed Defendant Sergeant Jane Doe that the information he was referring to was in DCIS and that she could look it up.  Defendant Sergeant Jane Doe had full access to the DOC computer system, DCIS, and should have checked the system prior to transferring Mr. Howard into the cell with Inmate Shimbel.

Defendant Sergeant Jane Doe ignored Mr. Howard's request and waved her hand to have the control center open the cell door.  Mr. Howard became extremely anxious and scared and requested that Defendant Sergeant Jane Doe please "check the computer" to confirm the information that he was providing.  At that point, the Sergeant threatened Plaintiff by advising him, "You ain't on parole yet, you know?"  Plaintiff knew that disobeying a direct order could result in a Class II Code of Penal Discipline charge which would immediately stop his parole status.  Thus, hearing he would not be released on parole if he failed to comply, he entered the cell.  The Sergeant slammed the door and Mr. Howard was left alone with Shimbel in the cell.

Upon entry into the cell, Shimbel immediately recognized Plaintiff.  Shimbel then began yelling at Plaintiff for "dropping his name" to corrections officers and blaming Plaintiff for his prior placement in Administrative Segregation at Sterling Correctional Facility.  Plaintiff, scared for his safety, sat on the toilet not saying anything or even making eye contact with Shimbel.  Inmate Shimbel approached Plaintiff and put one hand on Plaintiff's shoulder and the other hand on Plaintiff's head, shoving him off of the toilet causing his head to hit the cement wall before falling to the floor.  Shimbel then

5

became irate, calling Plaintiff a "fucking snitch" and "faggot." Plaintiff remained on the floor in a fetal position anticipating a beating from Shimbel. Shimbel leaned down and told Plaintiff, "the only reason I don't choke you the fuck out is because I'm leaving." He then ordered Plaintiff to get off of the floor. Plaintiff again sat on the toilet while Shimbel paced in the doorway, looking out the window to see where staff might be. Shimbel said, "they say once you go black, you won't go back…let's find out." (Shimbel was apparently referring to a friend of Plaintiff's at another COD facility who is African-American.)

Shimbel then pulled out his penis, went back to look out the window, and returned to stand directly in front of the Plaintiff. Shimbel told Plaintiff, "do what you do" and Plaintiff began crying. Shimbel again checked out the window, came back to stand in front of Plaintiff, smacked Plaintiff on the back of the head, and forced him to perform oral sex. After two to three minutes, Shimbel again pushed Plaintiff to the floor and then masturbated until he ejaculated into the toilet. Shimbel told Plaintiff, "I can't give you any of that 'cause you'll take it to the pigs." Plaintiff then jumped from the floor and stepped around Shimbel, hitting the emergency call button by the cell door. An officer's voice came over the speaker asking "what's your emergency?" Plaintiff, still fearing Shimbel might physically attack him, told the officer that he needed his release clothes. The officer opened the cell door and Plaintiff stepped out. At that time, the Sergeant and U.S. Marshal Service deputies were walking towards him.

Plaintiff was given his "dress out clothes" and taken to a cubicle to be searched. Shimbel was placed in the cubicle next to Plaintiff and the Marshals began the searches. While dressing, Plaintiff attempted to alert the U.S. Marshal to the situation.

6

Specifically, Plaintiff told him, "I'm not supposed to be around Shimbel" and tried to explain that it was related to "a PREA issue." The Marshal did not respond to Plaintiff's statements and placed Plaintiff and Shimbel in restraints. They were then escorted to a government car where they were placed in the back seat together. During the drive from DRDC to the U.S. Court Building, Shimbel continued to verbally threaten Plaintiff.

Plaintiff arrived at the U.S. Court Building at the same time that Jefferson County Sheriff's Office deputies arrived to pick-up detainees. Plaintiff then learned that he was going to Jefferson County Detention Center and Shimbel was being transported to the Federal Detention Center. Once in the holding area of the U.S. Marshal's office, a marshal removed restraints from inmates, including Plaintiff, while sheriff deputies replaced the restraints with their own. Plaintiff told the marshal, "I need to talk to someone about an assault." The Marshal advised him to "take care of it at Jeffco." Plaintiff was then transported to the Jefferson County Detention Center. Upon arrival at the detention center, and once alone with a deputy, Plaintiff informed a deputy and a nurse about the assault that had just occurred at DRDC and sought medical attention.

On September 19, 2007, the day after the assault, at approximately 9:30 a.m., Plaintiff suffered a severe anxiety attack requiring medical attention, in which his heart rate and blood pressure elevated and he hyperventilated. Medical personnel had him placed in the Medical Housing Unit as a result. On September 24, 2007, Plaintiff informed Jefferson County Nurse Suzanne Carpenter that he was in great need to see a counselor. When Nurse Carpenter asked why, Mr. Howard told her of the sexual assault at DRDC on September 18, 2007. Deputy John Hady, the nurse's escort, stepped into Plaintiff's cell and inquired about Plaintiff's allegations. Following their

7

conversation, Deputy Hady had a counselor meet with Plaintiff.

Deputy Hady then conferred with Jefferson County Sergeant Al Vorhies who contacted DOC/DRDC employee Sheryl Saucido to report the sexual assault. Ms. Saucido advised Sergeant Vorhies that Plaintiff is a "drama queen" and "don't worry about it." Deputy Hady generated a report regarding the sexual assault which was provided to DOC/DRDC personnel.

DOC employee Saucido later contacted Sergeant Vorhies and confirmed that it was very possible that Plaintiff was placed in a cell with Shimbel. No DOC official or employee has ever contacted Plaintiff about this sexual assault that occurred within their facility, despite Plaintiff's repeated attempts to contact and inform DOC officials and other employees.

Based on the foregoing, Plaintiff has asserted one claim for relief: 42 U.S.C. § 1983 -- Eighth Amendment and Fourteenth Amendment Violation -- Cruel and Unusual Punishment

**b.     Defendants:**

Defendants Aristedes Zavaras, Robert Cantwell, Scott H. Hall and Dona Zavislan deny they violated Plaintiff's constitutional rights in any respect whatsoever. Defendants deny they personally participated or had any knowledge of the events that allegedly occurred at the Denver Reception and Diagnostic Center on September 18, 2007. Defendants also deny most of the allegations raised in the Plaintiff's Complaint and therefore deny most of the allegations raised in the Plaintiff's statement of claims above.

As defenses and affirmative defenses, Defendants assert the following: (1)

8

Plaintiff's Complaint fails to state a claim as to which relief may be granted; (2) All or part of Plaintiff's claims do not rise to the level of constitutional violations, sufficient to state a claim upon which relief may be granted; (3) Defendants' actions were taken for legitimate, nondiscriminatory penological purposes; (4) The injuries and damages sustained by Plaintiff, in whole or in part, were proximately caused by his own acts or omissions and/or the acts or omissions of third parties over whom Defendants have no control or right of control; (5) Plaintiff failed to mitigate his damages, if any, as required by law; (6) Defendants never breached any duty owed Plaintiff at any time in the course of his incarceration; (7) At all times pertinent herein, Defendants acted in accordance with all common law, statutory, regulatory, policy, and constitutional obligations and without any intent to cause Plaintiff any harm; (8) Some or all of the Plaintiff's claims are barred and/or limited by the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq.*; (9) Defendants may not be held liable on the basis of any vicarious liability or respondeat superior theory for any alleged violation of the United States Constitution; (10) Defendants in their individual capacities are entitled to qualified immunity from the Plaintiff's claims pursuant to 42 U.S.C. § 1983; (11) Defendants' conduct was, at all times, lawful, justified and privileged and any actions complained of by Plaintiff in relation to Defendants were justified by penological reasons; (12) Plaintiffs' injuries and damages, if any, were either pre-existing or not aggravated by any action or omission of or by Defendants, nor were they proximately caused by or related to any act or omission of Defendants; (13) Plaintiff's damages, if any, may be subject to offset by virtue of amounts received from other sources as provided by law; (14) Upon information and belief, Plaintiff may not be the real party in interest, in whole or in part, to pursue all or

part of his claims and damages; (15) Plaintiff's claims for punitive or exemplary damages against Defendants are barred, reduced, or in the alternative, are unconstitutional and would violate their rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; (16) Plaintiff was deprived of no well-settled liberty or property interest and he was afforded all of the rights, privileges and immunities guaranteed by the Constitution and no constitutionally protected interest is impugned in relation to any claim of Plaintiff; (17) Plaintiff's claims against the Defendants are barred, in whole or in part, due to a failure of personal participation on their part; (18) No custom, policy or practice of the Colorado Department of Corrections or any of the Defendants violated any of the Plaintiff's constitutional rights; (19) Plaintiff's claims are barred by his failure to comply with jurisdictional and administrative prerequisites to suit, including applicable deadlines; (20) Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, failure to exhaust administrative remedies, and failure to provide timely notice; (21) Plaintiff's claims for punitive or exemplary damages against the Defendants in their official capacities are barred by federal law; (22) Plaintiff's claims for damages against the Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution and the definition of "person" of 42 U.S.C. § 1983; (23) Plaintiff's claims for injunctive relief are moot; (24) Plaintiff is not entitled to the relief sought in his Complaint under any of the theories asserted; and (25) Defendants specifically reserve the right to amend their Answer to include additional defenses and affirmative defenses and/or delete defenses and affirmative defenses which have become non-applicable upon completion of additional discovery.

## 4.     UNDISPUTED FACTS

a.     Plaintiff Scott L. Howard was an inmate within the Colorado Department of Corrections.

b.     Plaintiff's claim arises under the Constitution and laws of the United States, and is brought pursuant to 42 U.S.C. § 1983.

c.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

d.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

e.     Plaintiff is a citizen of the United States and was previously a resident of the State of Colorado during the time he was incarcerated by the DOC.

f.     At all times relevant to the subject matter of this litigation, Defendant Aristedes Zavaras was a citizen of the United States and a resident of Colorado and generally acts under color of state law in his capacity as the Executive Director of the Colorado Department of Corrections.

g.     At all times relevant to the subject matter of this litigation, Defendant Robert Cantwell was a citizen of the United States and a resident of Colorado and generally acts under color of state law in his capacity as the Colorado Department of Corrections Executive Director of Prisons.

h.     At all times relevant to the subject matter of this litigation, Defendant Scott H. Hall was a citizen of the United States and a resident of Colorado and generally acts under color of state law in his capacity as the Warden of DRDC.

i.     At all times relevant to the subject matter of this litigation, Defendant Dona Zavislan was a citizen of the United States and a resident of Colorado and generally acts under color of state law in her capacity as an Associate Warden of DRD.

j.  The Department of Corrections has listed the 2-11 Crew as a Security Threat Group.

k.  DOC Administrative Regulation No. 600-07 defines an STG as follows: "A group of three or more individuals with a common interest, bond, or activity characterized by criminal or delinquent conduct, engaged in either collectively or individually, with the potential to create a security threat to DOC facilities and/or functions within DOC.  This shall include, but not be limited to, gangs and disruptive and deviant groups."

l.  On September 18, 2007, for part of the day, Plaintiff was housed at the Denver Reception and Diagnostic Center's Infirmary Unit where he was being transferred from the custody of the DOC to the custody of the U.S. Marshals Service.

m.  On September 24, 2007, Plaintiff reported to a Jefferson County Representative that he was assaulted by Simon Shimbel on September 18, 2007 at the DRDC.

## 5.  COMPUTATION OF DAMAGES

### a. *Plaintiff:*

Plaintiff claims appropriate compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial.  Furthermore, Plaintiff claims all economic losses on all claims allowed by law; punitive damages on all claims against those defendants allowed by law and in an amount to be determined at trial; attorneys fees and the costs of this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the lawful rate and any further relief that this court deems just and proper, and any other

12

relief as allowed by law. A more detailed description of Plaintiff's damages will be provided to the Defendants in the normal course of discovery.

### b. Defendants:

Defendants are not claiming any damages from the Plaintiff at this time. Defendants, however, reserve their right to seek their attorneys fees and costs pursuant to applicable federal law.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. The Parties conducted a meeting pursuant to Fed. R. Civ. P. 26(f) on December 30, 2009.

b. Participants in the meeting were as follows:

(1) Sara J. Rich, Esq. *(Counsel for Plaintiff)*

(2) Andrew D. Ringel, Esq. *(Counsel for Defendants)*

c. Rule 26(a)(1) disclosures will be exchanged on or before **January 18, 2010**.

d. The Parties do propose that Rule 26(a)(1) disclosures be exchanged by **January 18,** 2010. Given other pressing deadlines faced by counsel for both Parties as well as recent travel by counsel for Plaintiff, the Parties require additional time to exchange Rule 26(a)(1) disclosures and have agreed to a deadline of January 18, 2010.

e. The Parties have not agreed to conduct informal discovery.

f. The Parties agree to abide by a uniform exhibit numbering system. Additionally, the Parties have discussed the possibility of utilizing the discovery in another ongoing case in which Mr. Howard is a plaintiff and has sued for the actions

which took place at Fremont Correctional Facility and Sterling Correctional Facility as described in his Complaint. *See Scott Howard v. John Clarkson, et al.*, Civil Action Number 06-cv-00282-PAB-CBS. To the extent the parties agree that such discovery can be used in this case, the parties will enter into and file an appropriate stipulation with this Court.

  g. The Parties anticipate that their claims or defenses will involve the discovery of some electronically stored information. To the extent that discovery or disclosures involves information or records in electronic form, the Parties will take steps to preserve that information. The Parties agree that, to the extent feasible, the Parties will exchange information (whether in paper or electronic form) in PDF format.

  h. The Parties have discussed the possibility of a prompt resolution of this case.

## 7. CONSENT

All Parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

  a. The Parties do not propose any modifications to the presumptive numbers of depositions or interrogatories contained in the Federal Rules. Each side shall be limited to 10 depositions, in addition to named parties and experts. Additional depositions may be scheduled if good cause is shown and leave of court is obtained.

  b. The Parties do not propose any modifications to the limitations on the length of depositions. A deposition is limited to one day of seven hours as provided in Fed.R.Civ.P. 30(d)(2), unless otherwise agreed by the Parties or unless otherwise

ordered by the Court.

c. Each side may serve a total of 25 interrogatories, 25 requests for production of documents, and 25 requests for admission, including all discrete subparts.

d. Other Planning or Discovery Orders. The Parties do not propose any additional orders concerning scheduling or discovery at this time.

### 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: **February 5, 2010.**

b. Discovery Cut-off: **September 24, 2010.**

c. Dispositive Motion Deadline: **October 22, 2010.**

d. Expert Witness Disclosure:

    (1) (A) Plaintiff:

        Anticipated field(s) of expert testimony: Plaintiff may call experts in the following fields: Psychology, Prison Security Issues with regard to rape occurrences and PREA, Treating or other Medical Physicians

        (B) Defendants:

        Defendants anticipate potentially calling experts in the fields identified by the Plaintiff above and treating health care providers of the Plaintiff.

    (2) Parties agree to limit the number of experts to 5 per side, inclusive of treating health care providers for the Plaintiff.

    (3) The Parties shall designate all experts and provide opposing

counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **June 14, 2010.**

(4) The Parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **July 14, 2010.**

Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the Parties unless the stipulation is approved by the Court. In addition to the requirements set forth in Rule 26(a)(2)(B)(i)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.

e. **Deposition Schedule:**

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
| --- | --- | --- | --- |
| Scott L. Howard | TBA | TBA | 7 Hours |
| Aristedes Zavaras | TBA | TBA | 7 Hours |
| Robert Cantwell | TBA | TBA | 7 Hours |
| Scott H. Hall | TBA | TBA | 7 Hours |
| Dona Zavislan | TBA | TBA | 7 Hours |
| Jane Doe, Intake Sergeant | TBA | TBA | 7 Hours |

\* The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures and through the course of discovery.

f. **Deadline for Interrogatories:**

The Parties propose submission of the written interrogatories at any time after

16

the date of the 26(f) Conference.  The Parties propose responses to the written interrogatories within 30 days after receiving the written interrogatories.  The last written interrogatories shall not be served upon any adverse party any later than 33 days before the discovery cut-off date, **August 20, 2010**.

   g.   **Deadline for Requests for Production of Documents and/or Admissions:**

The Parties propose submission of requests for production of documents at any time after the date of the 26(f) Conference.  The Parties propose responses to the requests for production of documents and/or requests for admission within 30 days after receiving the.  The last written request for production of documents and/or request for admission shall not be served upon any adverse party any later than 33 days before the discovery cut-off date, **August 20, 2010**.

   **10.   DATES FOR FURTHER CONFERENCES**

   a.   A settlement conference will be held on _____, **2010 at \_\_\_\_o'clock  a.m./p.m.**  It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

   ( )   *Pro se* parties and attorneys only need be present.

   ( )   *Pro se* parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel. If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

   ( )   Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before _____ outlining the facts and issues, as well

17

as the strengths and weaknesses of their case.

    b.    Status conferences will be held in this case at the following dates and times:

_____

_____

_____

    c.    A final pretrial conference will be held in this case on _____ at \_\_\_\_\_ o'clock \_\_\_\_ m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than five (5) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

    a.    Discovery or scheduling issues on which counsel after a good faith effort, were unable to reach an agreement: None.

    b.    The Parties estimate that the jury trial will take 5 days.

    c.    The Parties agree that it is not more efficient or economical to conduct any pretrial proceedings in the District Court's facility at 212 N. Wahsatch Street, Colorado Springs, Colorado.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established in the judicial officer presiding over the

Case No. 1:09-cv-02228-REB-MEH   Document 18   filed 01/12/10   USDC Colorado
pg 19 of 20


trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

### 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED this ___ day of January, 2010.

BY THE COURT:

_____
Magistrate Judge Michael E. Hegarty

APPROVED:

*s/ Sara J. Rich*                          *s/ Andrew D. Ringel*

_____        _____
David A. Lane, Esq.                    Andrew D. Ringel, Esq.
Sara J. Rich, Esq.                      Hall & Evans, L.L.C.
KILLMER, LANE, & NEWMAN, LLP    1125 17th Street, Suite 600
1543 Champa Street, Suite 400   Denver, CO 80202-2052
Denver, Colorado  80202            Phone: 303-628-3453
Phone: 303-571-1000                 Fax: 303-628-3238

Fax: 303-571-1001
dlane@kln-law.com
srich@kln-law.com

*Counsel for Plaintiff*

ringela@hallevans.com

*Counsel for Defendants*